5 F.3d 715
 UNITED STATES of America, Plaintiff-Appellee,
v.
Merrick Ralph FALESBORK, a/k/a Merc, a/k/a Merrick,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence Alfred LINDSEY, a/k/a Clarence Lindsay, a/k/a Cal,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tyrone BOONE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby Louis TURNER, a/k/a Robert Louis Turner, a/k/a Bone,
Defendant-Appellant.
 Nos. 92-5219, 92-5240, 92-5241, 92-5269.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 29, 1993.
Decided Sept. 1, 1993.
 
 Henry Kowalchick, William L. Taliaferro, Jr., Rabinowitz, Rafal, Swartz, Taliaferro & Gilbert, P.C., Norfolk, VA (Alfred M. Tripp, Virginia Beach, VA, for appellant Boone, William E. Buyrn, Buyrn & Buyrn, Chesapeake, VA, for appellant Turner, on brief), for appellants.
 Laura Marie Everhart, Asst. U.S. Atty., Norfolk, VA (Richard Cullen, U.S. Atty., on brief), for appellee.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 This appeal presents principally two issues of criminal sentencing: (1) whether a sentence enhancement based upon a prior uncounseled misdemeanor conviction is unconstitutional, and (2) whether, for purposes of sentencing, a defendant's admitted involvement in an earlier drug-related murder may be considered part of the same course of conduct as his possession of cocaine several months later, the offense of which he was convicted. Finding no error in the district court's disposition of these issues and the various other issues appellants raise, we affirm.
 
 
 2
 * Merrick Ralph Falesbork, Clarence Alfred Lindsey, Tyrone Boone, and Bobby Louis Turner were charged, along with four other individuals, in a 39-count indictment for conspiracy to possess and distribute cocaine and various specific acts of possession and distribution over a period from August 1986 to December 1990 in the tidewater area of Virginia. Falesbork, Lindsey, and Boone pled guilty to one count of possession of cocaine with intent to distribute, and Turner pled guilty to conspiracy.
 
 
 3
 At sentencing, the evidence presented established that the defendants had been engaged in operating a major drug distribution ring in Virginia's tidewater area over a period of several years. Falesbork supplied Turner and Boone with cocaine from New York. Boone, Lindsey, and Turner bought and sold cocaine among themselves as well as selling to others. Evidence was presented that these defendants, together, distributed more than sixteen kilograms of cocaine during their illegal collaboration.
 
 
 4
 Turner and Boone worked particularly closely with each other. The two were initially neighbors and later roommates. They operated essentially as partners in the drug trade, and when Boone was robbed of cocaine, Lindsey helped in carrying out the arrangements to have the robber murdered (though these plans ultimately went awry and an uninvolved third party was killed).
 
 
 5
 The sentences imposed on the defendants reflect the amount of illegal drugs attributable to each as well as applicable sentence enhancements. In sentencing Falesbork, the district court refused to reduce his offense level for acceptance of responsibility and applied an enhancement for his role as organizer, sentencing him to 235 months imprisonment. In sentencing Lindsey, the court applied enhancements for Lindsey's use of a firearm in connection with the drug activity and for a prior uncounseled misdemeanor conviction, sentencing him to 262 months imprisonment. Boone and Turner were sentenced to 168 months and 175 months imprisonment, respectively.
 
 II
 
 6
 Lindsey contends that the district court's reliance on a prior uncounseled misdemeanor conviction to enhance his sentence violated his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution. In sentencing Lindsey, the district court considered a November 1991 state misdemeanor conviction for possession of one quarter ounce of marijuana. Lindsey was not represented by counsel at the state trial and a waiver of such representation is not reflected in the relevant records. He was convicted and fined $250. As a result of this prior conviction, Lindsey's criminal history category under the Sentencing Guidelines for his federal crime was increased from a category I to a category II. Lindsey's counsel objected to this assessment, citing Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980).
 
 
 7
 In Baldasar the Supreme Court reversed a state conviction because the offense of which Baldasar was convicted was converted from a misdemeanor into a felony on the basis of a prior uncounseled misdemeanor conviction. Baldasar was convicted under Illinois law of shoplifting a showerhead worth $29 from a department store. Although this would otherwise have been a misdemeanor punishable by imprisonment for a term of not more than a year and a fine of not more than $1,000, because this was Baldasar's second conviction under the statute the offense was enhanced to a felony and Baldasar was sentenced to one to three years imprisonment. Because Baldasar was not represented by counsel at his first trial and had not waived the right to representation, the Supreme Court held this enhancement of his second conviction unconstitutional under the Sixth and Fourteenth Amendments.
 
 
 8
 The majority opinion in Baldasar is per curiam; it recites the facts of the case and then states, "For the reasons stated in the concurring opinions, the judgment is reversed...." Id. at 224, 100 S.Ct. at 1586. Three concurring opinions then follow. Each of these opinions takes as its starting point Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), in which the Court held that an uncounseled misdemeanor conviction is constitutionally valid so long as the offender is not sentenced to a term of imprisonment. The first concurrence in Baldasar, written by Justice Stewart and joined by Justices Brennan and Stevens, states that because "an increased term of imprisonment" was imposed upon Thomas Baldasar "only because he had been convicted in a previous prosecution in which he had not had the assistance of appointed counsel in his defense" it was invalid under the Sixth and Fourteenth Amendments as interpreted by Scott. 446 U.S. at 224, 100 S.Ct. at 1586 (Stewart, J., concurring). The second concurrence, written by Justice Marshall and also joined by Justices Brennan and Stevens, states that such convictions are invalid even if no term of imprisonment is imposed and that Scott was thus wrongly decided. The opinion continues, however, that even given the constitutional validity of such convictions under Scott, a prisoner's prior uncounseled misdemeanor conviction "could not be used collaterally to impose an increased term of imprisonment upon a subsequent conviction" under the Sixth and Fourteenth Amendments. Id. at 226, 100 S.Ct. at 1587 (Marshall, J., concurring). The third concurrence, written by Justice Blackmun, asserts that Scott was wrongly decided and that any offense for which a term of imprisonment of more than six months could potentially be imposed requires the provision of counsel under the Sixth and Fourteenth Amendments. Justice Blackmun therefore states that Baldasar's initial conviction was unconstitutional and could not be used to support an enhancement. Finally, there is a dissent by Justice Powell, joined by Chief Justice Burger and Justices White and Rehnquist, arguing that because the first conviction was constitutionally valid under Scott, it may be relied upon for enhancing the second without implicating Sixth and Fourteenth Amendment rights.
 
 
 9
 A split among the circuits has developed with regard to the significance of this fractured opinion. Compare United States v. Norquay, 987 F.2d 475, 482 (8th Cir.1993) (Baldasar forbids an upward departure based solely on uncounseled tribal court misdemeanor convictions),[1] and United States v. Brady, 928 F.2d 844, 854 (9th Cir.1991) (same; stating, "[A]ny term of imprisonment imposed on the basis of an uncounseled conviction where the defendant did not waive counsel violates the Sixth Amendment under Baldasar. "), with United States v. Nichols, 979 F.2d 402, 415-18 (6th Cir.1992) (prior uncounseled misdemeanor conviction was properly considered in sentencing under Sentencing Guidelines); United States v. Castro-Vega, 945 F.2d 496, 500 (2d Cir.1991) (same), cert. denied, --- U.S. ----, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993); United States v. Eckford, 910 F.2d 216, 219 (5th Cir.1990) (same; stating, "The inconsistency between Justice Blackmun's approach and Justice Marshall's expansive approach has clouded the scope of the Baldasar opinion."), and United States v. Peagler, 847 F.2d 756, 758-59 (11th Cir.1988) (upholding use of a prior uncounseled misdemeanor conviction as evidence of defendant's character).
 
 
 10
 Beginning with the understanding that Scott, which holds that an uncounseled misdemeanor conviction is constitutional if the defendant is not jailed, has not been overruled by Baldasar, we can abide by both decisions by recognizing that the holding of Baldasar is limited to prohibiting the elevation of a misdemeanor to a felony by reason of an uncounseled conviction that could have resulted in imprisonment for more than six months. The question remains open therefore whether the sentence for a felony may be enhanced on the basis of a prior uncounseled misdemeanor conviction which was constitutionally entered under Scott. We hold that such a prior conviction, which was constitutionally entered (indeed, is not constitutionally challenged), may be used to enhance a sentence. In doing so, we join the majority of the circuits that have considered the issue. As the Second Circuit explained in United States v. Castro-Vega:
 
 
 11
 The problem posed in this case--calculating a defendant's criminal history by relying in part on a prior uncounseled misdemeanor conviction--is different from the situation in Baldasar. In Baldasar, the defendant's prior conviction materially altered the substantive offense for which he could be held criminally responsible by converting it from a misdemeanor to a felony with a prison term--an offense that on its own would trigger a right to counsel. In the instant case, the court used an uncounseled misdemeanor conviction to determine the appropriate criminal history category for a crime that was already a felony.
 
 
 12
 945 F.2d at 500; see also Wilson v. Estelle, 625 F.2d 1158, 1159 n. 1 (5th Cir.Unit A 1980) (Baldasar held only "that a prior uncounseled misdemeanor conviction may not be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term."), cert. denied, 451 U.S. 912, 101 S.Ct. 1985, 68 L.Ed.2d 302 (1981).
 
 
 13
 Our holding views each of Lindsey's criminal convictions discretely. When Lindsey was convicted of a misdemeanor and fined $250 without the assistance of counsel, his conviction was constitutionally valid under Scott, and he has not contended otherwise. When Lindsey was later convicted of a drug felony, the prior conviction was not applied to alter criminal liability, as is prohibited by Baldasar. Rather, his recidivist conduct was taken into account only to select the appropriate sentence within the range legally established by Congress for the felony. We do not find this to contravene any rights protected by the Sixth or Fourteenth Amendments. Were we now to extend Baldasar to prohibit sentencing enhancements for prior uncounseled misdemeanor convictions, we would render totally unstable the current procedures for trying misdemeanants, procedures relied on in resolving millions of cases each year. Scott legitimizes Lindsey's first conviction, and its use in considering the appropriate sentence for a later offense was therefore proper. See United States v. Unger, 915 F.2d 759 (1st Cir.1990), cert. denied, 498 U.S. 1104, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991).
 
 III
 
 14
 The second principal issue presented involves the enhancement of Lindsey's sentence on the basis of his involvement in a drug-related murder several months before the particular drug transaction for which he was convicted. Pursuant to a plea agreement, Lindsey pled guilty to Count 18 of the indictment, which charged possession of one-half kilogram of cocaine with intent to distribute on or about November 27, 1987. Based on his involvement in a drug-related murder that took place in July 1987, Lindsey's sentence level was enhanced under U.S.S.G. Sec. 2D1.1(b)(1), which provides, "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."
 
 
 15
 At sentencing, Lindsey freely admitted his involvement in the murder in question. Boone, Lindsey's partner in the cocaine business, had been robbed of cocaine at knifepoint by his stepbrother. Boone told Lindsey he intended to have his stepbrother killed for the robbery, and a third party, Bobby Swafford, agreed to carry out the murder. Lindsey watched as Swafford sawed off the shotgun that was to be used, and Boone informed him the murder was to be carried out that night. Swafford then attempted the arranged murder, but by mistake killed Boone's stepfather rather than stepbrother. Lindsey then delivered to Swafford $300 sent by Boone for Swafford's efforts.
 
 
 16
 On the basis of the evidence presented, the sentencing judge found that the murder protected drugs in which Lindsey as well as Boone had an interest:
 
 
 17
 My findings of fact are that Tyrone Boone was robbed in the course of a drug transaction which was part of the overall scheme involved in which the defendant here had been indicted, and I find that the defendant and Tyrone Boone were partners, and that from that I can infer that the defendant himself had some interest, direct or indirect, in the drugs which were taken from Tyrone Boone.
 
 
 18
 These findings are not clearly erroneous, as all were supported by testimony at trial and sentencing. On appeal Lindsey argues, however, that these facts are legally insufficient to support the enhancement imposed.
 
 
 19
 Two factors in combination render this enhancement initially somewhat troublesome and mark it as lying near the outer edges of the conduct that may be attributed to a defendant for sentencing purposes: (1) the fact that the gun in question was physically used by a third party, not directly by the defendant, and (2) the temporal remoteness of the defendant's contact with the gun from his crime of conviction. While the enhancement imposed may lie near that boundary, however, it does not cross it.
 
 
 20
 It is well established that even where no conspiracy is charged, enhancement is appropriate where a firearm is physically possessed by another participant in the offense conduct to further the illegal enterprise. In United States v. White, 875 F.2d 427 (4th Cir.1989), we upheld the enhancement of a defendant's sentence for aiding and abetting a drug offense on the grounds that another participant in the offense had a gun, although no conspiracy was charged. We squarely rejected the suggestion that only the defendant who physically controlled the firearm was responsible for its presence under the Sentencing Guidelines:
 
 
 21
 Jackson [the appellant] contends that the court erred in enhancing his base offense level because he did not physically possess the weapon which was discovered under [his codefendant] White's seat in the vehicle. In support of this argument, Jackson points out that he entered a guilty plea to aiding and abetting White in the drug offense, but that he did not plead guilty to conspiracy. Therefore, he contends that the government was forced to prove that he independently possessed the weapon.
 
 
 22
 * * *
 
 
 23
 The district court did not err in applying Guideline Sec. 2D1.1(b)(1) and enhancing Jackson's base offense level for the presence of the weapon. The weapon was present, Jackson and White were acting in concert, it was not improbable that the weapon was connected with the offense, and, under the circumstances of the case, it was fair to say that it was reasonably foreseeable to Jackson that his co-participant was in possession of a firearm. Therefore, under Guideline Sec. 1B1.3(a)(1), Jackson is "otherwise accountable" for the weapon.
 
 White, 875 F.2d at 433.[2]
 
 24
 The second notable aspect of the enhancement conduct in this case, its temporal remoteness from the crime of conviction, also fails to render the enhancement inappropriate. Even when a guilty plea is entered on a single count of possession, the court must nevertheless look to the entire relevant conduct in determining the sentence. That conduct includes quantities of illegal drugs possession of which was related to, though distinct from, the crime of conviction. See United States v. Williams, 880 F.2d 804, 806 (4th Cir.1989). It also includes possession of money from drug sales related to, though distinct from, the crime of conviction. See United States v. Hicks, 948 F.2d 877, 881-83 (4th Cir.1991). And it includes possession of a gun while engaging in drug sales related to, though distinct from, the crime of conviction. See United States v. Willard, 919 F.2d 606 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991).
 
 
 25
 In Willard the appellant, Kenneth Willard, was convicted of possessing cocaine and heroin found in his car at the time of his arrest. His sentence for possession of these drugs was enhanced because he owned several firearms that he kept at his place of business. Willard argued that because no gun was directly involved in the offense of conviction he had not possessed a dangerous weapon "during the commission of the offense." The Ninth Circuit rejected this argument, noting that the evidence was that Willard had been involved with the drug trade for many years, during which he had possessed the weapons in question. Thus, although no firearm was directly involved in the crime of conviction, it was not clearly erroneous for the district court to have found that firearms were involved in the offense conduct as a whole.
 
 
 26
 As the Willard court held, and we hold today, a district judge must look to the entire course of relevant criminal conduct, not merely the narrow offense of conviction, in deciding whether to apply a Sec. 2D1.1(b)(1) enhancement for possession of a weapon. This outcome is commanded by the Sentencing Guidelines, which provide that with respect to offenses in which the offense behavior is ongoing or continuous in nature, "specific offense characteristics ... shall be determined on the basis of ... all acts or omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. Sec. 1B1.3(a) (read in conjunction with U.S.S.G. Sec. 3D1.2(d)). This outcome is also the one commended by the realities of the situation. Dangerous weapons used for the protection of the drug trade relate to the establishment of an entire enterprise; their effects are not limited to a single deal. That reality is strongly reflected in the present case in which the aura of intimidation radiating from the murder a few months earlier could reasonably be said to have surrounded Lindsey's crime of conviction.
 
 IV
 
 27
 Appellants raise numerous other issues on their appeal: (1) whether the trial court's determination that Falesbork was dishonest about his conduct and was therefore not eligible for a two point reduction of offense level for acceptance of responsibility was clearly erroneous; (2) whether the trial court's finding that Falesbork was an organizer or leader of a criminal activity involving five or more participants (thus enhancing his sentence by four levels under U.S.S.G. Sec. 3B1.1(a)) was clearly erroneous; (3) whether the district court's findings as to the amounts of drugs attributable to Turner and Boone for sentencing purposes were clearly erroneous; and (4) whether it was error to consider hearsay accounts of testimony presented at other trials as evidence of the conduct relevant to sentencing.
 
 
 28
 The first three of these four attacks on the convictions below all fail for a common reason: they are all challenges to factual findings the trial court made on the basis of conflicting evidence. Given the existence of conflicting evidence, these findings are not clearly erroneous and therefore not proper grounds for reversal.
 
 
 29
 The district court's finding that Falesbork was dishonest about his prior conduct is well supported by the record. Pursuant to a plea agreement, Falesbork pleaded guilty to aiding and abetting possession of one kilogram of cocaine with intent to distribute. The plea agreement provided for the possibility of a reduction in the offense level for acceptance of responsibility:
 
 
 30
 The government does agree that at this time, the defendant has accepted responsibility for his conduct pursuant to Sec. 3E1.1 of the Sentencing Guidelines and would therefore be entitled to a 2 level decrease in his offense level. However, neither the court nor the probation officer is bound to accept this stipulation.
 
 
 31
 The Presentence Report prepared sometime later, however, found:
 
 
 32
 The defendant has not admitted to the Probation Officer the truth of the facts as they pertain to the Indictment. The defendant claims he was never in the Eastern District of Virginia until 1987 and did not have any contact with any of the individuals listed in the Thirty-Nine Count Indictment until the middle of 1987. Falesbork denies distributing cocaine to anyone in 1986. The defendant advises, "He has never had two kilos of cocaine in his life, and has never been in receipt of any money as a payment for cocaine." The defendant states that he is not sure if he was even in the area in April, 1988, when he is accused of Possessing with Intent to Distribute Cocaine. The defendant claims, "I wanted to plead guilty to anything to get this over with. I am not completely innocent but am not guilty of most of the things charged against me." Therefore, the defendant has not demonstrated a recognition and affirmative acceptance of personal responsibility for his conduct.
 
 
 33
 There was also testimony at sentencing from Sergeant Elvis T. Lewis of the Norfolk Police Department that Falesbork had not fully cooperated with law enforcement officials and refused to provide information on his crimes. At sentencing, although Falesbork expressed remorse for his crimes, he also stated, "My involvement in drugs wasn't to the extent that they're saying." Given the district court's factually supported finding that Falesbork had repeatedly lied to and withheld information from authorities and continued to do both, its conclusion that Falesbork had not accepted responsibility for his crimes and should be sentenced in conformity with the Presentence Report was not error.
 
 
 34
 Falesbork also challenges as clearly erroneous the finding that he organized or led a criminal organization involving five or more participants. That finding is also factually supported. One description of Falesbork's drug distributing activities given at sentencing included the following details demonstrating Falesbork's organization of at least six others, which is more than sufficient to justify the enhancement: Falesbork had several recruiters working for him to bring in new people to sell drugs for him, including two parties not otherwise involved in this appeal, Gladys Anderson (1) and Linwood Spruill (2); Falesbork had put a gun in defendant Turner's (3) face and threatened to kill him when Turner was not selling enough drugs for Falesbork; defendant Lindsey (4) acted as Falesbork's chauffeur and procurer as well as selling drugs for Falesbork; Falesbork supplied cocaine to defendant Boone (5) for resale; and Falesbork used a courier named "Bobby" (6) to transport drugs from New York to Virginia.
 
 
 35
 Boone contends that he was sentenced based partially on testimony of an informant as to what that informant had witnessed while under the influence of cocaine. Such reliance, he argues, renders the resulting conclusions clearly erroneous (although it might be more direct to argue that consideration of such evidence was an abuse of discretion). Boone cites no authority for this contention, and we find it to be inconsistent with the broad scope of information that 18 U.S.C. Sec. 3661 permits a sentencing judge to consider:
 
 
 36
 No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.
 
 
 37
 In light of that discretion given to the district court, we find no abuse.
 
 
 38
 Turner also challenges the amount of cocaine attributed to him, basing this challenge on his perception that the court found him accountable "for knowing or foreseeing an extraordinary amount of cocaine" and that this amount was greater than that attributed to equally culpable codefendants. The finding as to the amount of cocaine foreseeable to Turner was, however, made on the basis of valid evidence and was thus properly within the authority of the sentencing judge.
 
 
 39
 The final issue raised by appellants, whether it was error to consider hearsay accounts of testimony presented at other trials as evidence of the conduct relevant to sentencing, has already been clearly resolved. As we noted in United States v. Terry, 916 F.2d 157 (4th Cir.1990), while upholding an upward departure that was based upon hearsay evidence of prior crimes, " 'The trial court may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain.' " Id. at 161 (quoting United States v. Papajohn, 701 F.2d 760, 763 (8th Cir.1983)). This is because of the broad discretion the sentencing court enjoys as to what information to credit. See 18 U.S.C. Sec. 3661.
 
 V
 
 40
 For the reasons given, the sentences imposed on the appellants by the district court are affirmed.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 The Eighth Circuit has since granted rehearing en banc in a case raising a related issue: whether a sentence may be vacated on the grounds that a prior, uncounseled misdemeanor conviction was considered in choosing to impose the maximum sentence permissible under the Sentencing Guidelines. United States v. Thomas, No. 92-2112, 1993 WL 105111, 1993 U.S.App. LEXIS 11807 (May 20, 1993)
 
 
 [2]
 Section 1B1.3(a)(1)(B) of the U.S. Sentencing Guidelines has since been revised. It provides that conduct relevant to determining the applicable Guideline range includes:
 in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy ), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; ...
 (emphasis added).
 The essential holding of White, that possession of a gun by one acting in concert with the defendant may be attributed to the defendant as being reasonably foreseeable, remains unaffected by this revision.