47 F.3d 1166
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro AGUILAR, Jr., a/k/a Pete, Defendant-Appellant.
 No. 94-5171.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 30, 1994.
Decided: February 3, 1995.
 
 ARGUED: James R. Fox, JORY & SMITH, Elkins, WV, for Appellant. Sherry L. Muncy, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, WV, for Appellee. ON BRIEF: William D. Wilmoth, United States Attorney, Elgine Heceta McArdle, Special Assistant United States Attorney, Wheeling, WV, for Appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Pedro Aguilar Jr. appeals from his sentence on one count of conspiracy to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1), to which count Aguilar pleaded guilty. He argues that his sentence was improperly enhanced by two levels under U.S.S.G Sec. 2D1.1(b)(1) for possession of several weapons at the time of his arrest, and that the government failed to move for a departure from the Sentencing Guidelines based on Aguilar's substantial assistance with law enforcement, as promised in an agreement between the government and Aguilar which would be in addition to his written plea agreement. For the reasons set forth below, we affirm in part and remand with instructions.
 
 
 2
 In January 1993, John Hill was arrested in West Virginia in possession of substantial amounts of cocaine and marijuana. Hill began assisting law enforcement in the investigation of Aguilar, Hill's source of supply. Hill reported that in November and December 1992, Hill made several trips to Aguilar's home in Humble, Texas to pick up marijuana, and Aguilar corroborated that Hill had received at least fifteen pounds of marijuana from Aguilar during that period. On February 26, 1993, in cooperation with law enforcement, Hill ordered two pounds of marijuana and one ounce of cocaine from Aguilar, which Aguilar sent from Texas to Hill in West Virginia via Federal Express.
 
 
 3
 A search of Aguilar's house in Texas on April 2, 1993 uncovered five pounds of marijuana, one gram of cocaine, and a number of unloaded but operational firearms, including handguns, semiautomatic weapons, and hand grenades. While interrogating Aguilar during the search, a law enforcement officer learned that Aguilar had ordered a residence "hit" because the occupants failed to pay him for drugs. Texas authorities confirmed that the residence to which Aguilar referred as hit had been "shot full of holes." Moreover, Aguilar admitted to federal authorities that after the death of his friend during a drug transaction, he "went on a rampage and hurt a lot of people." A Texas police officer informed federal authorities that Aguilar had been dealing drugs in Texas for years and had on occasion used a firearm to disguise himself as a police officer in order to steal the drugs of others. Following the search, Aguilar was arrested.
 
 
 4
 After his arrest, Aguilar cooperated extensively with law enforcement, both federal and state, on a number of investigations.
 
 
 5
 Aguilar was named in a six-count indictment and negotiated a plea agreement under which Aguilar pleaded guilty to one count of conspiracy to traffic drugs "within the Northern Judicial District of West Virginia, and in Humble, Texas." In exchange, the government agreed to dismiss the remaining counts of the indictment, and to recommend to the district court that Aguilar's sentence be set at the Guidelines minimum, reduced for acceptance of responsibility under U.S.S.G. Sec. 3E1.1.
 
 
 6
 At the sentencing hearing, the government declined to move the district court for a Guidelines departure based on Aguilar's substantial assistance with law enforcement investigations, as permitted by U.S.S.G. Sec. 5K1.1. The district court imposed a two-level enhancement for possession of the weapons discovered during the search of Aguilar's house, as recommended by the Probation Office in Aguilar's pre-sentence report, although at the hearing the government stated that it "did not consider there would be any enhancement for the guns at the time [of] the plea agreement." Aguilar was sentenced to twenty-four months in prison and five years of supervised release.
 
 I.
 
 7
 Aguilar first challenges the enhancement of his sentence for possession of weapons in connection with the offense, contending that an enhancement is improper if "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1, Application Note 3. Aguilar argues that because the weapons were found at his house in Texas rather than in West Virginia where the conspiracy was alleged to have occurred, because the weapons were found over a month after the conspiracy as charged in the indictment had ended,[1] and because the weapons were unloaded, it was clearly improbable that the weapons were connected with the conspiracy. We disagree.
 
 
 8
 Initially, the parties agree that the district court's factual determination to enhance Aguilar's sentence is reviewed for clear error. However, because the facts are substantially undisputed and Aguilar's challenge goes only to the district court's application of the Guidelines to those facts, we are of opinion that we must review the enhancement with "due deference to the district court's application" of U.S.S.G. Sec. 2D1.1(b)(1), as required by 18 U.S.C. Sec. 3742(e); see United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir.1989). Daughtrey 's due-deference standard is essentially a sliding scale of review, the level of which depends on the nature of the particular challenge at issue: We will review determinations that "closely resemble[ ] a finding of fact" for clear error; however, "[a]s the determination approaches a purely legal determination," we are required to "review the determination more closely." Daughtrey, 874 F.2d at 217 (quoting 134 Cong. Rec. H11257 (Oct. 21, 1988)). Because Aguilar assigns as error only the district court's application of the Guidelines to a particular factual situation, we are of opinion that our review under the Daughtrey standard should be plenary, or very nearly so.
 
 
 9
 We are of opinion that our decision in United States v. Falesbork, 5 F.3d 715 (4th Cir.1993), is controlling on this issue. In that case, we held that relevant conduct beyond the offense of conviction may be used to enhance a sentence for possession of weapons. Falesbork, 5 F.3d at 721. The facts as found in the pre-sentence report and adopted by the district court, which in essence are not disputed by Aguilar, indicate an ongoing course of drug trafficking in and around Aguilar's house in Humble, Texas, including several crimes of violence and the use of firearms in connection with various drug thefts. The last drug transaction engaged in by Aguilar in connection with the instant offense, the Federal Express delivery from Texas to West Virginia, occurred just four days prior to Aguilar's arrest. Moreover, the conspiracy alleged in Count One of the indictment, to which Aguilar pleaded guilty, included acts in Humble, Texas as well as in West Virginia. In fact, there is no evidence that Aguilar was physically present in West Virginia during the commission of any of the acts comprising the offense charged in the indictment; all of Aguilar's conduct relating to the offense of conviction having occurred in and around his home in Humble, Texas. We are of opinion that there was substantial undisputed evidence in the record from which the district court could conclude that it was not clearly improbable that the weapons found in Aguilar's house were connected with "the entire course of relevant criminal conduct." Falesbork, 5 F.3d at 721.
 
 
 10
 Aguilar argues that Application Note 3 to Guidelines section 2D1.1(b)(1), which states that, "[t]he enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet," requires that we reverse Aguilar's weapons-possession enhancement. Again, we disagree. The Application Note merely describes a situation where, without evidence of some connection between the weapon and any criminal conduct, it is clearly improbable that the weapon was used in the entire course of the defendant's relevant criminal conduct. As we have explained, in the instant case it was not erroneous for the district court to conclude that the weapons found in Aguilar's house probably were used by Aguilar in the course of his relevant criminal conduct.
 
 
 11
 Appellant also suggests that because the weapons were unloaded, it is clearly improbable that they were used in connection with Aguilar's relevant conduct. Again, we disagree. The Sixth Circuit decision in United States v. Garner, 940 F.2d 172 (6th Cir.1991), which held that one unloaded single-shot Derringer pistol found locked in a safe at the time of arrest cannot support a possession-of-weapons enhancement, is not controlling. In any event, we are of opinion that Garner is consistent with our holding today.
 
 
 12
 The court in Garner identified three factors, "any one of which, standing alone, would not be sufficient," but "the cumulative effect" of which "compel the conclusion that it is clearly improbable that the gun found in Garner's home was connected with his drug offense." Garner, 940 F.2d at 175. Those factors were: (1) that a Derringer pistol "is not the normal type of firearm associated with drug activity"; (2) that Garner's gun was not loaded and no compatible ammunition was found in Garner's house; and (3) that the gun was "locked in a safe which neither contained any indicia of drug paraphernalia nor was located within sufficient proximity to raise an inference of relatedness." Garner, 940 F.2d at 175. By contrast, Aguilar was arrested in constructive possession of numerous weapons including semiautomatic firearms, which are commonly used in the course of drug dealing, as well as hand grenades, and not all of these weapons were secured.[2] Moreover, under our circuit precedent in Falesbork, the district court properly adopted the pre-sentence report's finding of "an inference of relatedness" between the weapons found in Aguilar's home and Aguilar's relevant criminal conduct. We therefore affirm the district court's enhancement of Aguilar's sentence by two levels for possession of a weapon under U.S.S.G. Sec. 2D1.1(b)(1).
 
 II.
 
 13
 Aguilar next challenges the government's failure to move the district court for a departure from the Sentencing Guidelines based on his substantial assistance to law enforcement. See Sec. 5K1.1. Aguilar's plea agreement is in writing, but it contains no promise by the government to move for a substantial-assistance departure. Aguilar argues, however, and the government has very nearly conceded,[3] both that there was some form of additional agreement whereby such a motion would be made in exchange for Aguilar's assistance and that Aguilar did render assistance.
 
 
 14
 However, the government told the district court that it would be willing to explain in camera its reasons for refusing to make such a motion, which, as subsequently revealed to this court, involved an indictment handed down against Aguilar in the Eastern District of Texas for illegal drug-trafficking activity in the period after the written plea agreement was made. The government argues that Aguilar "did not completely fulfill his end of the bargain," Brf. at 17, and that the government was therefore not required to move for a substantial-assistance departure.
 
 
 15
 After reviewing the record, we see no evidence that any additional substantial-assistance agreement that may have been made between Aguilar and the government was conditioned on Aguilar's being "completely forthright and truthful" to the authorities or on any of the other conditions articulated in Aguilar's written plea agreement or elsewhere. We are thus of opinion that the government has not on the record shown a sufficient reason for refusing to make the substantial-assistance motion that it might have made, because the government has not revealed either the nature of the agreement or the conditions placed on Aguilar's conduct in order to merit any motion promised by the government.
 
 
 16
 We therefore remand to the district court with instructions to determine whether or not the government and Aguilar had an additional substantial-assistance agreement and, if so, the terms of any such agreement; and to determine whether Aguilar was entitled to have any such agreement fulfilled. Of course, if there be any such agreement, and if Aguilar is entitled to any benefit from it, the district court may be required to vacate its sentence and resentence Aguilar. This it is authorized to do. Upon consideration on remand of the matters mentioned in this opinion with respect to any additional agreement, the district court will enter an appropriate order.
 
 
 17
 In all other respects, as explained above, Aguilar's appeal is without merit.
 
 Accordingly, Aguilar's sentence is
 
 18
 AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 The conspiracy, as charged in Count One of the indictment, occurred "[f]rom in or about November, 1992, to in or about January 1993."
 
 
 [2]
 At least one of the hand grenades was tested and was operational. Further, there is some dispute in the record as to whether the other weapons were secured or whether they were readily accessible. The pre-sentence report found that "some of these firearms, as well as the hand grenades, were unsecured and excisable [sic] even to the defendant's children." Aguilar's objection to the recommended two-level enhancement states only that "the firearms were placed in a locked safe," but does not dispute the Probation Office's finding that the hand grenades, which the Probation Office clearly distinguishes from other firearms, were not secured and at least one was operational. In any event, the district court's adoption of the pre-sentence report's findings was not clearly erroneous. We are of opinion that this alone would be sufficient to distinguish Aguilar's circumstances from those described in Garner
 
 
 [3]
 We are of opinion that the government's statement at sentencing that there was a substantial-assistance agreement and that Aguilar had rendered substantial assistance is sufficient evidence of the existence and performance of the agreement, to keep the case from falling within the scope of United States v. Conner, 930 F.2d 1073, 1075 (4th Cir.), cert. denied, 60 U.S.L.W. 3359 (U.S.1991), as a case in which the defendant has not performed