**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5917

BERNARD KING, a/k/a Shaborn,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CR-94-163)

Argued: March 7, 1997

Decided: July 22, 1997

Before ERVIN, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William P. Robinson, Jr., ROBINSON, BANKS &
ANDERSON, Norfolk, Virginia, for Appellant. Alexander Young
Thomas, Special Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.
**ON BRIEF:** Helen F. Fahey, United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Alexandria, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Bernard King of conspiracy to distribute and to possess with the intent to distribute crack cocaine, and the court sentenced him to a term of life in prison. On appeal, King contends that he is entitled to a new trial because (1) the district court accepted the government's racially neutral rationale for striking three black veniremen, (2) the district court refused to give the duress instruction which King requested, and (3) the evidence to support the conclusion that King participated in the conspiracy willingly was insufficient. King also challenges aspects of his sentence. Finding no reversible error, we affirm.

I

In the summer of 1991 King acted as a middleman and coordinator in a New York-based drug deal which went awry when the cocaine supplier absconded with $180,000 in cash without delivering cocaine to the buyer, Paul Ebanks. Ebanks held King accountable, and one of Ebanks' associates, Robert Bruce Gillins, took King into custody at gunpoint, hit him, and threatened him in an attempt to recover the money. When Gillins ultimately became satisfied that King had not planned the $180,000 fiasco, Gillins agreed to accept $20,000 from King and let him "work off the debt" by helping Ebanks and Gillins distribute cocaine. After paying Ebanks $20,000, which King obtained from his mother, King agreed to go to Virginia to sell crack cocaine. King sold crack for nearly two years as a member of the Ebanks/Gillins conspiracy in the Norfolk, Virginia area, "controlling" distribution in parts of the city. As one co-conspirator later testified, King was free to do as he wished and could have left the conspiracy, but "there was no reason to leave." King's enterprise flourished until the conspiracy unraveled and he was arrested.

2

II

King contends that at the beginning of trial, the government struck three black women from the jury panel, denying him equal protection. In <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), the Supreme Court held that the racially motivated use of peremptory challenges violates the equal protection provisions of the Constitution. If the defendant establishes a prima facie showing that the prosecutor struck black panel members in circumstances that raise an inference of racially motivated exclusion, the burden shifts to the government to articulate a neutral justification for its use of the peremptory challenges. The defense then bears the burden of establishing that any facially neutral justifications given by the government are pretextual. We review a district court's rejection of <u>Batson</u> challenges for clear error. <u>See</u> <u>United States v. Johnson</u>, 54 F.3d 1150, 1163 (4th Cir. 1995).

In response to the defendant's <u>Batson</u> challenge in this case, the government explained that it had struck two potential jurors because they were unemployed and a third because she was a housewife of about the same age as King's mother, who was scheduled to testify. In each case, the government expressed concern that the juror might too easily sympathize with the defendant and defense witnesses.

"[W]hile prosecutors may not challenge prospective jurors because of their race, they are ordinarily . . . entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to [their] view concerning the outcome of the case to be tried." <u>United States v. Lane</u>, 866 F.2d 103, 106 (4th Cir. 1989) (internal quotes omitted). Thus, <u>Batson</u> does not provide grounds for the defendant to contest peremptory challenges based on potential jurors' current and past employment. <u>See id.</u> And it does not reach the prosecution's perception that, without regard to race, a potential juror is situated similarly to a witness, with whom that potential juror might sympathize. Accordingly, we cannot conclude that the district court clearly erred in finding that the government's explanations were not pretextual.

III

King next contends that the court erred in failing to give the jury the duress instruction that he had requested. We review the district

3

court's decisions on giving a particular form of jury instruction under an abuse of discretion standard. See United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996). "We will not reverse a conviction based on improper jury instructions as long as the instructions given by the district court, as a whole, included the substance of the defendant's requested . . . charge." United States v. Heater, 63 F.3d 311, 326 (4th Cir. 1995).

At trial, King contended that his participation in the conspiracy was the product of duress in the form of threats against him and his family. Accordingly, he submitted the following proposed instruction to the district court:

> The Court instructs the jury that the defendant's conduct in the instant case may be justified if the evidence supports the following: 1) That the defendant was under unlawful and present threat of death or serious bodily injury; 2) That the defendant did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; 3) That the defendant reasonably believed that he had no legal alternative but to commit the criminal act in order to avoid death or serious bodily harm; 4) That there existed a direct causal relationship between the criminal activity and the avoidance of the threatened harm.

The district court initially declined to give the instruction on the ground that the evidence did not support the four elements in the instruction. However, when King's counsel argued to the jury what amounted to a duress defense, the court determined that the jury should be given some legal instruction to enable them to address the defense. Accordingly, the court gave the requested instruction except that it altered the introductory statement to say,"defendant's conduct in the instant case may not be justified by a defense of duress unless the evidence supports the following . . . four elements. . . . The burden is upon the defendant to show all four of these elements." When the court asked counsel if there was any objection to the jury charge, King's counsel responded, "Except for one instruction we didn't get -- but actually got -- yes, no objections to the charge."

Even if King effectively objected to the instruction that the court gave, we find no error in the duress instruction that was given. See

4

United States v. Crittendon, 883 F.2d 326, 330 (4th Cir. 1989) (setting forth four elements of duress defense).

IV

In a related argument, King contends the evidence was insufficient to support the conclusion that his participation in the conspiracy was knowing, willful and intentional. In assessing a challenge to the sufficiency of the evidence, we must uphold a conviction"if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). We must give the prosecution the benefit of direct as well as circumstantial evidence and must draw all reasonable inferences in favor of the prosecution. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Evidence was introduced that other members of the conspiracy considered King to be "part of the family," rather than an unwilling participant. Indeed, the evidence indicated that when drugs were turned over to King for distribution, he was neither threatened nor forced to take them. Instead, "he was just relaxed, like he's ready for the stuff, to go get rid of it, whatever he got to do with it." Finally, he continued to distribute drugs in Virginia through his own agents for nearly two years. This evidence is sufficient to support a conclusion that King willingly participated in the conspiracy.

V

Finally, King challenges his sentence, arguing that the court erred in enhancing his offense level by applying U.S.S.G.§ 3B1.1(b) (supervisory role) and U.S.S.G. § 2D1.1(b)(1) (possession of a firearm) and in sentencing King under the provision for cocaine base rather than cocaine powder. All three assignments of error challenge factual determinations made by the district court, which we review for clear error. See United States v. Falesbork, 5 F.3d 715, 722 (4th Cir. 1993) (reviewing factual conclusion on the defendant's role in the offense for clear error); United States v. Apple , 915 F.2d 899, 914 (4th Cir. 1990) (reviewing factual conclusion of whether a firearm was possessed for clear error).

5

Because witnesses testified that King had six people working for him in the distribution of crack cocaine and King himself said that he provided crack to five others for their distribution, we conclude that the district court did not clearly err in finding King to be a supervisor for purposes of the three-level enhancement authorized by U.S.S.G. § 3B1.1(b). Similarly, because of King's own admission that he carried a 9 mm handgun which Gillins gave him to protect the drugs, the district court had sufficient evidence to support its finding that King possessed a weapon for purposes of the two-level enhancement of U.S.S.G. § 2D1.1(b)(1). Finally, we cannot conclude that the district court clearly erred in sentencing King under U.S.S.G. § 2D1.1(c)(1) for cocaine base (crack), rather than cocaine powder, because King's counsel stipulated to the accuracy of lab reports which revealed that the substance seized from King and his co-conspirators was crack cocaine.

Accordingly, the judgment of the district court is

AFFIRMED.