**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 29 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DANNY RAY HILL,

      Defendant-Appellant.

No. 97-6053
(W. District of Oklahoma)
(D.C. No. CR-96-27-2-A)

**ORDER AND JUDGMENT***

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. This court therefore honors the parties' requests and orders the case submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Danny Ray Hill was charged with (1) conspiracy to distribute methamphetamine; (2) possession of methamphetamine with intent to distribute; and (3) maintaining a place for the purpose of manufacturing, distributing, and using methamphetamine. Hill pleaded guilty to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841, and the other two counts were dismissed. The district court sentenced Hill to 121 months of imprisonment and five years of supervised release. The sentence was based on an adjusted offense level of thirty-two.

Hill appeals the district court's calculation of his sentence on three grounds. He contends that the district court erred in (1) determining the drug quantities used to calculate the base offense level; (2) applying a two-level enhancement for possession of a firearm; and (3) failing to resolve the conflict between a five-year and ten-year mandatory minimum sentence.

## I.     Drug Quantities Used to Calculate Base Offense Level

At sentencing, the district court held Hill accountable for (1) 69 grams of actual methamphetamine (with a marijuana equivalency of 690 kilograms) found at a Rock Creek Road residence; (2) 57 grams of actual methamphetamine (with a marijuana equivalency of 570 kilograms) producible from chemicals found in a van Hill was driving; (3) 113 grams of actual methamphetamine (with a marijuana equivalency of 1130 kilograms) producible from chemicals found at his Sandra

Drive residence; and (4) 18 ounces of methamphetamine (with a marijuana equivalency of 510.3 kilograms) based on the testimony of John Robert Laden. In sum, the district court attributed a marijuana equivalency of 2900.3 kilograms to defendant. Based on this marijuana equivalency, the district court held that Hill's base offense level was thirty-two under U.S.S.G. § 2D1.1.

Hill specifically challenges all the above drug quantities except the eighteen ounces of methamphetamine testified to by Mr. Laden.[1] In the alternative, Hill claims the district court improperly held that the 69, 57 and 113 grams were "actual methamphetamine," rather than methamphetamine, and the base offense level calculated by the court was thus too high.

At sentencing, the government has the burden of proving drug quantities and types by a preponderance of the evidence. *See United States v. Lande*, 40 F.3d 329, 331 (10th Cir. 1994); *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994). A sentencing court may rely on estimates of drug quantities as long as the estimates are "based on information with a minimum indicia of reliability." *See Deninno*, 29 F.3d at 578. This court reviews the sentencing court's factual

---

[1] In his argument, Hill does not appear to dispute the 18 ounces of methamphetamine attributed to him based on the testimony of Mr. Laden, nor does he appear to dispute its marijuana equivalency of 510.3 grams. Even if Hill were to dispute this amount, Mr. Laden's testimony regarding the approximate amounts of methamphetamine he observed during drug transactions was sufficient to support the district court's attribution of 18 ounces of methamphetamine to defendant.

findings regarding the quantities of drugs attributable to a defendant for clear error. *See United States v. Hardwell*, 80 F.3d 1471, 1497 (10th Cir. 1996), *reh'g on other grounds*, 88 F.3d 897 (10th Cir. 1996); *United States v. McKneely*, 69 F.3d 1067, 1078 (10th Cir. 1995).

The district court's findings concerning the sixty-nine grams of methamphetamine found at the Rock Creek Road residence are not clearly erroneous. Michael Wayne Childers, a forensic chemist for the Oklahoma State Bureau of Investigation, testified that methamphetamine was present in two liquids found at the Rock Creek Road residence. Furthermore, he described how the methamphetamine could be converted to powder from the liquids and testified that sixty-nine grams of "actual methamphetamine" could be extracted from the liquids. In light of Mr. Childers' testimony, the sentencing court did not clearly err in determining the above drug quantity.

Because there was testimony that the amount was pure methamphetamine, the court further did not clearly err in finding the sixty-nine grams constituted "actual methamphetamine" with a marijuana equivalent of 690 kilograms. *See* U.S.S.G. § 2D1.1 Application Note 10. In addition, despite Hill's contention that he was merely present at the Rock Creek Road residence and was not involved in the manufacture of methamphetamine, there is sufficient basis in the record for the district court to hold him accountable for the methamphetamine found at the

residence: he was arrested at the Rock Creek Road residence; his fingerprints were on laboratory equipment found at the residence; and testimony linked him to the manufacture of methamphetamine with codefendant Leslie Monson.

While defendant also challenges his accountability for and the quantity of methamphetamine producible from the precursor chemicals found in his van and at his Sandra Drive residence, this court need not consider these challenges because the additional quantities would not affect Hill's base offense level. Together, the sixty-nine grams of actual methamphetamine found at the Rock Creek Road residence and the eighteen ounces of methamphetamine testified to by Mr. Laden produce a marijuana equivalence of 1200.3 kilograms (690 kilograms + 510.3 kilograms). Section 2D1.1(c) of the Sentencing Guidelines sets the base offense level at thirty-two when the defendant is held accountable for "[a]t least 1,000 KG but less than 3,000 KG of Marihuana." U.S.S.G. § 2D1.1(c). Hill's base offense level is thus thirty-two regardless of the methamphetamine producible from chemicals found in his van and his Sandra Drive residence.

Given Hill's base offense level, the adjustments made to that level by the district court, and his criminal history category, the Sentencing Guidelines provide an incarceration period of 121-151 months.[2] *See* U.S.S.G. § Fifth

---

[2]Hill's only challenge to the adjustments made to his base offense level is addressed below. Hill does not challenge his criminal history category.

Amendment tbl. Hill received the lowest sentence within this range, 121 months. As a consequence, he cannot argue that the additional methamphetamine attributed to him negatively impacted his sentence. We therefore affirm the district court's determination of Hill's base offense level.

**II.     Enhancement for Possession of Firearm**

Hill contends the district court erred in applying a two-level enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). The gun was found during a traffic stop in February 1996. Hill argues the weapon enhancement is inapplicable because he did not possess the firearm during the crime for which he was convicted, possession of methamphetamine with intent to distribute in September and November of 1995.

This court reviews the trial court's factual findings at sentencing for clear error, while we review the trial court's legal interpretation of a Sentencing Guideline *de novo*. *See United States v. Earls*, 42 F.3d 1321,1326 (10th Cir. 1994).

Section 1B1.3 of the Sentencing Guidelines requires courts to consider relevant conduct when sentencing a defendant. *See* U.S.S.G. § 1B1.3. In *United States v. Roederer*, 11 F.3d 973 (10th Cir. 1993), this court held that the relevant conduct provision of the Sentencing Guidelines applies to weapons enhancements under § 2D1.1(b)(1). *See id*. at 982. Thus, in evaluating whether the

-6-

enhancement should be applied, the sentencing court looks not only at the offense of conviction but also at all acts "'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *See id.* (quoting U.S.S.G. § 1B1.3(a)(2)); *see also United States v. Falesbork*, 5 F.3d 715, 720 (4th Cir. 1993) ("Even when a guilty plea is entered on a single count of possession, the court must nevertheless look to the entire relevant conduct in determining the sentence. That conduct includes . . . . possession of a gun while engaging in drug sales related to, though distinct from, the crime of conviction." (citations omitted)).

In order to establish weapon possession, the government must prove by a preponderance of the evidence "'that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'" *Roederer*, 11 F.3d at 982 (quoting *United States v. Eastland*, 989 F.2d 760, 770 (5th Cir. 1993)). The necessary proximity is generally established by "'evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred.'" *Id.* at 983 (quoting *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991)).

Officer Robert Negri testified that during the February traffic stop, a shotgun was found next to the driver's seat of the van and the vehicle also contained chemicals and equipment for manufacturing methamphetamine. The

district court found the conduct of Hill and the van's passengers was "closely related to the offense of conviction," and identified the intended sale of contraband as a "common thread." The court further found that Hill was, at a minimum, in joint possession of the weapon and that, as driver of the van, Hill was situated "better than anyone else to brandish the weapon." Based on the record, these findings are not clearly erroneous.

Because the district court found the weapon was possessed during conduct closely related to the offense of conviction, the weapon enhancement is applicable. The government need not show the weapon was possessed during the offense to which defendant pleaded guilty. Therefore, this court affirms the two-level weapon enhancement.

## III. Conflict as to Mandatory Minimum Incarceration Period

Hill entered his guilty plea to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841, on June 26, 1996. At that time, the district court advised him the mandatory minimum sentence of incarceration for his offense was five years and the maximum punishment that could be imposed was forty years in prison, a fine, and supervised release. In December 1996, a revised Presentence Investigation Report stated that the offense carried a mandatory sentence of not less than ten years nor more than life imprisonment. Hill claims that this change in the mandatory minimum and maximum terms of

imprisonment is a result of this court's decision in *United States v. Richards*, 87 F.3d 1152 (10th Cir.) (en banc), *cert. denied*, 117 S. Ct. 540 (1996). *Richards* was decided after Hill pleaded guilty but prior to his sentencing. Based on these facts, Hill makes two arguments: (1) the application of *Richards* is a violation of the Ex Post Facto Clause of the Constitution and (2) the district court's failure to properly advise him of the mandatory minimum and maximum penalties violated Rule 11(c) of the Federal Rules of Criminal Procedure and rendered his plea involuntary.

Defendant's ex post facto argument is appropriately framed as a due process issue.

> The *Ex Post Facto Clause* is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government. Petitioner's claims arise out of judicial interpretation of a statute, and therefore, his rights derive from the Due Process Clause. Because, however, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, we apply ex post facto principles to decide the due process issue.

*Lustgarden v. Gunter*, 966 F.2d 552, 553-54 (10th Cir. 1992) (citations and quotations omitted). The relevant inquiry for this court under due process analysis is whether the change in this court's interpretation of 21 U.S.C § 841 was foreseeable. *See id.* at 554. If the interpretive change was foreseeable, it does not violate defendant's due process rights. *See id.* The fact that this court relied on the "plain meaning" of the language in § 841 when it decided *Richards* is

evidence of the decision's foreseeability.  *See id.*; *see also Richards*, 87 F.3d at 1157.  We need not address the foreseeability of *Richards*, however, because we conclude *Richards* had no impact on defendant's sentencing.

*Richards* held that liquid by-products containing methamphetamine constitute a "mixture or substance" for purposes of 21 U.S.C. § 841(b) and, therefore, the entire weight of the liquid by-products should be included in determining a defendant's statutory minimum and maximum sentences.  *See Richards*, 87 F.3d at 1157.  Because *Richards* only addresses the determination of statutory minimum and maximum sentences, it does not affect the calculation of drug quantities under the Sentencing Guidelines, nor does it impact a defendant's sentence unless the applicable Sentencing Guideline range falls above the statutory maximum or below the statutory minimum.  Under the Sentencing Guidelines, the district court properly determined that Hill had an adjusted total offense level of thirty-two with an incarceration range of 121-151 months.  Thus, regardless of whether the statutory mandatory minimum was five years or ten years, under the Guidelines the minimum sentence Hill could have received was 121 months, absent exceptional circumstances which are inapplicable here.  Because 121 months is greater than both the five and ten-year statutory mandatory minimums under 21 U.S.C. § 841(b), *Richards* had no effect on Hill's sentencing.

Defendant's ex post facto challenge to the applicability of *Richards* is therefore irrelevant.

Hill also asserts that the district court violated Rule 11(c) of the Federal Rules of Criminal Procedure by failing to properly advise him of the accurate minimum and maximum punishments at the time he entered his guilty plea. At the plea hearing, the prosecutor informed the district court that the statutory mandatory penalty was not less than five years nor more than forty years, but did not provide the court with information regarding the attributable drug quantities which ultimately determine the statutory penalty. Relying on the information provided by the prosecutor, the district court then advised defendant of these statutory minimum and maximum penalties. However, based on the quantity of drugs attributed to Hill at the sentencing hearing, higher mandatory minimum and maximum sentences were applicable.

Rule 11(c) provides, in part, that

[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the . . . nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law . . . .

F.R.C.P. 11(c). Thus, erroneous information regarding the minimum and maximum mandatory sentences violates Rule 11(c).

It appears that Rule 11(c) was violated. A violation of Rule 11(c), however, does not necessarily render defendant's plea involuntary. Rule 11(h) requires this court to apply a harmless error analysis, providing that "[a]ny variance from the procedures required by [Rule 11] which does not affect substantial rights shall be disregarded." F.R.C.P. 11(h). Rule 11(h) requires a defendant to demonstrate that knowledge of the omitted or inaccurate information "'would have changed his decision to plead guilty.'" *United States v. Wright*, 930 F.2d 808, 810 (10th Cir. 1991) (quoting *United States v. Gomez-Cuevas*, 917 F.2d 1521, 1527 (10th Cir. 1990)).

The record contains no evidence Hill would have changed his plea had he known that ten years was the mandatory statutory minimum. Hill was aware that the Presentence Investigation Report calculated his mandatory statutory minimum sentence at ten years.[3] At the sentencing hearing, his own counsel expressly recognized that 121 months was the minimum applicable sentence. After determining the drug quantities attributable to Hill, the district court took a recess during which time defendant had an opportunity to talk to his counsel. When the court reconvened, both defendant and his counsel were asked if they had anything

[3]Hill made a written objection to the higher statutory minimum and maximum sentences cited by the Presentence Investigation Report on the ground that they were inconsistent with the statutory sentences he was advised of during his plea hearing; however, he did not contend that these higher sentences rendered his plea involuntary, nor did he move to withdraw his plea.

to add after the court calculated the adjusted offense level; each responded in the negative. Similarly, neither of them when asked offered a reason why the sentence should not be imposed at that time. Thus, despite ample opportunities during the sentencing hearing, Hill never contested the higher minimum sentence on the ground that it rendered his plea involuntary, nor did Hill suggest that he wished to withdraw his guilty plea.

Further, Hill was aware at the time he pleaded guilty that his punishment would be determined in accordance with the Sentencing Guidelines. Before accepting Hill's guilty plea, the district court properly instructed him that this case was subject to the Federal Sentencing Guidelines. The sentence Hill actually received, 121 months of incarceration followed by supervised release, was based on the Sentencing Guidelines, and was not affected by the statutory minimum and maximum penalties. Under the Guidelines, the minimum sentence Hill could have received was 121 months. Because 121 months is greater than both the five and ten-year statutory mandatory minimums under 21 U.S.C. § 841(b), the statutory mandatory minimum had no impact on his sentence. Additionally, the 121 month sentence is within the five to forty-year statutory range disclosed to

Hill by the district court at the time he entered his guilty plea.  As a consequence, any violation of Rule 11(c) was harmless error.

The judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge