**UNITED STATES of America,**

v.

**Montay Decarlos HODGE.**

**No. CR.A. 3:03CR0144–T.**

United States District Court,
M.D. Alabama,
Eastern Division.

April 9, 2004.

1284

Kent B. Brunson, U.S. Attorney's Office, Montgomery, AL, for Plaintiff.

Joseph Peter Van Heest, Federal Defenders, Montgomery, AL, for Defendant.

OPINION

MYRON H. THOMPSON, District Judge.

Defendant Montay Decarlos Hodge, a convicted felon, pleaded guilty to possessing a firearm in violation of 18 U.S.C.A. § 922(g)(1). Hodge is currently before the court for sentencing. In its pre-sentence investigation report, the United States Probation Office recommended that Hodge receive an additional four offense levels pursuant to U.S.S.G. § 2K2.1(b)(5) because he possessed the firearm "in connection with another felony offense," namely possession of 4.43 grams of marijuana.

Hodge objects that the § 2K2.1(b)(5) "specific-offense characteristic" is inapplicable. For the reasons given below, the court holds that the government has not met its burden of proving that § 2K2.1(b)(5) applies.

## I. BACKGROUND

Hodge was arrested on February 13, 2002, following an altercation with police officers at the Goo Goo Car Wash in Opelika, Alabama. Officer Denise Ingram of the Opelika Police Department responded to a complaint about loud music at the car wash, and, when she arrived, she encountered Hodge cleaning his car's engine. When Ingram approached, Hodge got in his car and sat in the driver's seat. At that point, Ingram recognized Hodge from a photograph posted in the police department's briefing room; Hodge had an outstanding warrant for failing to appear and for resisting arrest. Hodge began to back his car out of the car wash, but, by that time, another officer—Officer Converse—had blocked Hodge's car's path with his patrol car. Hodge got out of his car and walked to the front of the car; he then returned to the driver's side of the car, reached into the car, turned down the volume on the radio, and removed the ignition key. He then locked the car.

Officer Ingram attempted to get Hodge's attention, but he did not respond. She then touched him on the arm and asked him what he was doing. Hodge quickly lifted his arm, and a struggle ensued between Hodge and Officers Ingram and Converse. Hodge was not subdued until two additional officers arrived. Officers Ingram and Converse smelled alcohol on Hodge's breath.

After Hodge was put in custody, the police officers conducted a search of his

car and found the following: a loaded 9mm pistol under the driver's seat; a loaded 9mm magazine containing 15 rounds of ammunition in the glove box; and one box of 9mm cartridges containing seven live rounds under the driver's seat. After Hodge was taken to the Opelika City Jail, the officers found a clear plastic bag containing 4.43 grams of marijuana in his rear pants pocket.

A two-count indictment was filed on July 25, 2003, charging Hodge with one count of violating 18 U.S.C.A. § 922(g)(1),[1] the "felon-in-possession" statute, and one count of possession of a controlled substance in violation of 21 U.S.C.A. § 844(a), the "simple possession" statute. On October 7, 2003, Hodge pleaded guilty to the § 922(g)(1) count.

In its revised presentence-investigation report, the United States Probation Office calculated Hodge's total-offense level at 15. The base-offense level in Hodge's case is 14, U.S.S.G. § 2K2.1(a)(6), and the Probation Office found that Hodge should receive a four-level-offense enhancement based on the specific-offense characteristic in U.S.S.G. § 2K2.1(b)(5), which reads:

"If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than 18, increase to level 18."

The Probation Office applied the specific-offense characteristic because Hodge possessed the firearm "in connection with" possession of the marijuana found in his back pocket. The Probation Office then recommended that he receive a three-level downward adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1(a) & (b).

## II. DISCUSSION

■ Hodge objects to the § 2K2.1(b)(5) four-offense-level enhancement on the ground that the government has not proved that he possessed the pistol "in connection with" his possession of marijuana. The court is guided in its assessment by two non-controversial propositions. First, the court can enhance Hodge's sentence only if the government proves by a preponderance of the evidence that § 2K2.1(b)(5) applies. *United States v. Florence*, 333 F.3d 1290, 1294 (11th Cir. 2003). Second, the court's inquiry into whether the 2K2.1(b)(5) "specific-offense characteristic" properly applies is a fact-specific and fact-intensive one. *Cf. United States v. Saunders*, 318 F.3d 1257, 1267 (11th Cir.2003) (determining whether U.S.S.G. § 2B6.1(b)(2) applies depends on totality of circumstances); *United States v. Morris*, 286 F.3d 1291, 1296 (11th Cir. 2002) (determining what constitutes "position of trust" within in meaning of U.S.S.G. § 3B1.3 is highly dependent on specific facts of each situation).

---

1. Section 922(g)(1) provides that "It shall be unlawful for any person—who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Hodge was convicted of a crime punishable by a term of imprisonment exceeding one year on or about December 3, 1998, in the Circuit Court of Lee County, Alabama.

**1286**

## A.

As this court has discussed previously, *United States v. Hunter,* 980 F.Supp. 1439, 1447 (M.D.Ala.1997) (Thompson, J.), there is a split among the Courts of Appeals as to how to interpret § 2K2.1(b)(5). The majority of appellate courts has held that the phrase "in connection with" in § 2K2.1(b)(5) should be read in the same way as the United States Supreme Court in *Smith v. United States,* 508 U.S. 223, 237–38, 113 S.Ct. 2050, 2058–59, 124 L.Ed.2d 138 (1993), read the phrase "in relation to" as it appears in 18 U.S.C.A. § 924(c)(1), which requires the imposition of specified penalties if the defendant, "during and in relation to any crime of violence or drug trafficking crime[,] uses or carries a firearm." *United States v. Spurgeon,* 117 F.3d 641, 644 (2d Cir.1997); *United States v. Wyatt,* 102 F.3d 241, 247 (7th Cir.1996); *United States v. Nale,* 101 F.3d 1000, 1004 (4th Cir.1996); *United States v. Thompson,* 32 F.3d 1, 7 (1st Cir.1994); *United States v. Routon,* 25 F.3d 815, 818 (9th Cir.1994). Under this interpretation, the § 2K2.1(b)(5) enhancement properly applies when the government proves that "the weapon facilitated or potentially facilitated the felonious conduct." *Nale,* 101 F.3d at 1004. The enhancement does not apply "where the firearm's presence is merely coincidental." *Wyatt,* 102 F.3d at 247.

A minority of circuits has analogized § 2K2.1(b)(5) to U.S.S.G. § 2D1.1(d)(1), and has adopted a broader reading of the "in connection with" requirement. *United States v. Regans,* 125 F.3d 685, 687 (8th Cir.1997); *United States v. Condren,* 18 F.3d 1190, 1197 (5th Cir.1994). Section 2D1.1(b)(1) provides a two-offense-level enhancement to defendants convicted of drug offenses "[i]f a dangerous weapon (including a firearm) was possessed." The commentary to § 2D1.1(b)(1) states that it "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. (n.3). Thus, under the minority view, § 2K2.1(b)(5) presumptively applies whenever the defendant possesses the firearm at the same time he commits another felony.

The Eleventh Circuit Court of Appeals has rejected the majority interpretation of "in connection with," but without adopting the minority view. In *United States v. Young,* 115 F.3d 834 (11th Cir.1997), the court was called upon to interpret the phrase "in connection with" as it appears in U.S.S.G. § 4B1.4(b)(3)(A), the sentencing guideline applicable to defendants adjudged to be "armed career criminals" under 18 U.S.C.A. § 924(e).[2] The *Young* court interpreted "in connection with" according to its "ordinary and natural meaning" and found that the term should be read "quite expansively." 115 F.3d at 837. In so doing, the court specifically rejected the "facilitated or potentially facilitated" interpretation adopted by the majority of appellate courts considering the phrase as it appears in § 2K2.1(b)(5). *Id.* at 838. Although *Young's* holding was limited to

**2.** An "armed career criminal" is a defendant who is convicted under 18 U.S.C.A. § 922(g) and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C.A. § 924(e). Section 4B1.4(b)(3)(A) provides that the of-

fense level for an armed career criminal shall be no less than 34 "if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence . . ., or a controlled substance offense . . ., or if the firearm possessed by the defendant was of a type described in 26 U.S.C.A. § 5845."

the "armed career criminal" guideline, subsequent Eleventh Circuit decisions have relied on *Young* to reject the majority interpretation of § 2K2.1(b)(5). *E.g. United States v. Rhind,* 289 F.3d 690, 695 (11th Cir.2002).

### B.

 This court finds that, even under the more expansive, minority view, the government has not, in the court's assessment of the evidence, carried the burden of proving that § 2K2.1(b)(5) applies. The court reaches this conclusion after an independent assessment of the facts of this case and after an instructive, but not determinative, comparison of the facts of this case with those set forth in decisions of the Eleventh Circuit and the trial courts within the Eleventh Circuit that have directly addressed whether § 2K2.1(b)(5)—and other specific-offense characteristics that use the same "in connection with" language—should apply to defendants who simultaneously possessed a firearm and some other contraband.

In reviewing the Eleventh Circuit cases that have upheld lower-court decisions regarding whether § 2K2.1(b)(5) should be applied, this court has been mindful that the appellate court was acting in a deferential capacity as to the lower courts' findings of facts; in other words, the appellate court was not necessarily saying that a factual record would support *only* the ultimate factual conclusion reached by the district court but rather the record could reasonably support it. The appellate court was not necessarily saying that a court, faced with the same evidence, could not reach a contrary ultimate factual conclusion. Thus, subject to the clearly erroneous rule, an appellate court's upholding of a factual conclusion based on certain evidence would no more be binding on a trial court facing the same evidence than it would be on a jury (that would not have had the benefit of the appellate court's view on the adequacy of facts) hearing the same evidence. Otherwise, there would be the arbitrary result that the ultimate factual conclusion (which arguably could go either way) of the trial court, whose case was first to reach, and be upheld by, the appellate court on the adequacy-of-the-evidence issue, would be binding on all other trial courts confronted with the same facts.

As stated, this court has considered two appellate cases in applying the minority view of § 2K2.1(b)(5). These case have two things in common. First, they involve more than simple illegal possession, and, second, the decisions in the cases cite the defendants' potential use of the firearms to protect themselves or their contraband as the connection between the firearm and the illegal possession.[3]

In *Rhind,* the Eleventh Circuit affirmed that § 2K2.1(b)(5) applied to a group of defendants who were arrested for producing and passing counterfeit bills. At the time of the defendants' arrest, officers searched their car and found a pistol under the back seat and an unloaded shotgun, a

---

**3.** The Eleventh Circuit has also upheld the application of § 2K2.1(b)(5) to defendants who actively used or attempted to use the firearm that they illegally possessed in the commission of another felony. *United States v. Jackson,* 276 F.3d 1231, 1234–35 (11th Cir. 2001) (defendant reached for hidden gun while resisting arrest); *United States v. Whit-* *field,* 50 F.3d 947, 949 (11th Cir.1995) (burglary defendant threatened victim's neighbor with stolen gun during his escape and lay in wait for police with the gun concealed). These cases are not applicable because there is no allegation that Hodge actively used or attempted to use his pistol.

color printer, and counterfeit money in the trunk. 289 F.3d at 692. The court reasoned that "the mere availability and appearance of the firearms could have served to promote the defendants' prolonged criminal episode." *Id.* at 695. The court also wrote that "it would be reasonable to conclude that the presence of the firearms protected the counterfeit money from theft during the execution of the felony." *Id.*

In *Hunter*, this court held that § 2K2.1(b)(5) applied to a defendant who pleaded guilty to one § 922(g)(1) count and four counts of possessing with intent to distribute various controlled substances in violation of 21 U.S.C.A. § 841(a)(1). The gun at issue was found in a room at the defendant's house, where the police also found "hundreds of plastic bags commonly associated with drug transactions, a jar containing a substance that may be used to 'cut,' or dilute, drug aliquots to increase their volume, and records of drug transactions." 980 F.Supp. at 1441. Based on "the presence of both the guns and the instrumentalities of drug trafficking in the same room of Hunter's residence" and the fact that the gun was in the same dresser as the plastic bags and records, this court held that the gun "at least potentially facilitated Hunter's drug-distribution activities". *Id.* at 1448. This court also wrote that "Hunter would have been comforted by the knowledge that he enjoyed easy access to the loaded weapon[ ] should any perceived need to defend himself or otherwise further his felonious activities arise." *Id.*

Hodge's case is distinguishable. First, in both *Rhind* and *Hunter*, the defendants were engaged in more than simple possession of contraband. The defendants in *Rhind* were producing counterfeit bills,

and the defendant in *Hunter* was dealing drugs. There is no evidence that Hodge was engaged in drug trafficking. Indeed, he had only 4.43 grams of marijuana, and he was only charged with simple possession under § 844(a). Second, in both *Rhind* and *Hunter*, the courts' rationale for applying the enhancement was that the firearm would be used to protect the defendants' contraband. This is reasonable when the defendants are making counterfeit money or distributing drugs: they are dealing with customers and suppliers, and money is changing hands, both of which raise the real possibility of theft or other violence. It is not reasonable, however, to conclude that Hodge possessed his pistol to protect less than four-and-a-half grams of marijuana.

The same pattern of facts and reasoning appears in the cases in which the Eleventh Circuit has applied two analogous guideline provisions. In *United States v. Matos–Rodriguez*, 188 F.3d 1300 (11th Cir. 1999), the defendant was convicted of making, possessing, and selling counterfeit money, and the court upheld the district court's application of § 2B5.1(b)(3),[4] which increases a defendant's offense level by two "[i]f a dangerous weapon (including a firearm) was possessed in connection with the offense." The defendant was arrested after a high-speed chase that began when police attempted to arrest him after observing him sell fake currency to a confidential informant; during the chase, the defendant threw a pistol out his car window. 188 F.3d at 1302. The court held that "it is reasonable to conclude here that [the defendant] possessed the pistol to prevent theft during a close, face-to-face, hand-to-hand encounter with a person he apparently did not know well." *Id.* at

---

4. This specific-offense characteristic is now found at § 2B5.1(b)(4).

1309. Again, Hodge's case is distinguishable: there is no evidence he was involved in any sales of marijuana, and thus it would not be "reasonable to conclude here that [he] possessed the pistol to prevent theft." *Id.*

Finally, in *United States v. Gainey,* 111 F.3d 834, 837 (11th Cir.1997), the court upheld the application of U.S.S.G. § 4B1.4(b)(3)(A), which increases the offense level for "armed career criminals" if they "used or possessed the firearm or ammunition in connection with either a crime of violence ... or a controlled substance offense." As with the cases discussed above, the defendant in *Gainey* was engaged in drug distribution. He was arrested with 55 capsules of heroin and nearly $400 in cash, and he was ultimately convicted of possession with the intent to distribute. 111 F.3d at 837. The court's rationale again focused on the defendant's distribution activities: "the presence of the gun potentially emboldened Gainey to undertake illicit drug sales." *Id.* In Hodge's case, it is not reasonable to find that the presence of a pistol under the seat of his car "emboldened" him to possess a small amount of marijuana.

## C.

There are a couple of cases from outside Eleventh Circuit which have held that § 2K2.1(b)(5) applies to defendants who possessed, along with a firearm, only a very small amount of drugs, that is, an amount consistent with personal use. In *United States v. Condren,* 18 F.3d 1190 (5th Cir.1994), the Fifth Circuit Court of Appeals affirmed the application of the offense characteristic to a defendant who was arrested in his bedroom where the police found .1 gram of crack cocaine and 33.3 grams of marijuana seeds on his desk

and a .22 caliber revolver in a locked drawer. The court specifically rejected the argument that § 2K2.1(b)(5) should not apply because of the small amount of drugs. 18 F.3d at 1199. The court's rationale in deciding that offense characteristic applied, however, was very similar to the one in the Eleventh Circuit cases cited above: the defendant could have used the guns to protect himself and his drugs from threats arising out of his distribution activities. *Id.* at 1198–99 ("it must be kept in mind that [the defendant] was actively involved in distributing cocaine; it would be more than reasonable to infer that he would know ... that other persons would know ... that he kept drugs in his home, and that he would be concerned that those persons might seek to steal them"); *see also id.* at 1200 (the gun "was readily available to him to protect his drug-related activities").

In *United States v. Regans,* 125 F.3d 685 (8th Cir.1997), the Eighth Circuit Court of Appeals upheld application of § 2K2.1(b)(5) to a defendant who was arrested with a .22 caliber pistol and .29 grams of heroin on his person. In response to the defendant's argument that the enhancement should not apply to him because he possessed only enough heroin for personal use, the court began by stating that the enhancement is based in part on the "the increased risk of violence whenever guns are in the possession of persons engaged in committing drug felonies." 125 F.3d at 686. The court then wrote that "[w]hen a firearm is carried during a drug offense, including a possession-for-use offense, the drug felon has the ability to use the weapon in connection with his drug offense" because "[t]heft is a close and ever present partner of illegal drugs." *Id.* The court concluded that "there are many ways in which the weapon

can facilitate the drug offense and dangerously embolden the offender." *Id.* at 687.

The court is not persuaded by *Condren* and *Regans* that § 2K2.1(b)(5) applies to Hodge. First, the facts of *Condren* are more closely analogous to *Rhind* and *Hunter* than to those in this case because the *Condren* defendant "was actively involved in distributing cocaine." 18 F.3d at 1198. Thus, the inference that the defendant possessed his gun to protect himself from theft by people to whom he sold drugs, which was reasonable to the Fifth Circuit, is not reasonable in this case. There is no evidence that Hodge was selling drugs such that he had to be concerned about theft.

Second, while the facts of *Regans* are more analogous to the present case, the court is not persuaded by the Eighth Circuit's reasoning. That court's conclusion that there was a connection between the defendant's gun and his drugs was based on the assumption that drugs and violence always go together. In other words, the court based its conclusion that the required nexus existed between the defendant's gun and his drugs not on the facts of the case but on the assumption that the two always go together. This court was willing to rely on this assumption when there was evidence of drug dealing, *Hunter*, 980 F.Supp. at 1448, but it is not willing to do so where there is only evidence of personal use.

Further, *Regans's* reasoning results in essentially a categorical rule that whenever a defendant possesses both a gun and drugs, whatever the amount, § 2K2.1(b)(5) will apply. This is inconsistent with the requirement that the government *prove* a connection between a gun and drugs by a preponderance of the evidence. *Florence*, 333 F.3d at 1294. Such a categorical rule

is also inconsistent with the requirement that the court's inquiry should be fact-specific. *See Saunders*, 318 F.3d at 1267; *Morris*, 286 F.3d at 1296. Whether a "specific-offense characteristic" applies should be determined by careful consideration of the facts before the court. The categorical approach is also inconsistent with both the minority and minority interpretations of the "in connection with" language, for, under both interpretations, there is room for differing factual inferences; if the Sentencing Commission wanted § 2K2.1(b)(5) to apply categorically whenever drugs and guns are present, it could have easily said so.

Finally, and perhaps most significantly, common sense dictates that Hodge did not have the gun "in connection with" the small amount of marijuana found on him. While marijuana for even personal use is illegal, its prevalence, including even local legalization in some areas of the country, and the ease with which it can be obtained are common knowledge; in a small, individual personal-use amount, it is simply not the type of drug, absent other inculpating circumstances, for which one would need to be armed to protect it or one's self. The court emphasizes, however, that it does not hold that § 2K2.1(b)(5) can *never* apply when a defendant possesses only enough drugs for personal use; the guideline's application would depend on, among other things, the type of drug, the amount, whether the defendant had other drug habits, and the circumstances under which the defendant was using the drug.

## III. CONCLUSION

The court is well aware of the frequent connection between drugs and guns. However, the court is not convinced in this case that Hodge's illegal possession of his

gun was "in connection with" his possession of marijuana. The court, therefore, holds that § 2K2.1(b)(5) does not apply to him, and the court will thus sustain his objection to the pre-sentence investigation report.

Hodge will be sentenced in accordance with this opinion.